# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 15, 2005 Session

## STATE OF TENNESSEE v. WILLIE JOE FRAZIER

**Appeal from the Circuit Court for Marshall County**
**No. 8356      Charles Lee, Judge**

---

**No. M2003-03014-CCA-R3-CD - Filed July 26, 2005**

---

In 1980, the Appellant, Willie Joe Frazier, was indicted for multiple counts of armed robbery and related assaults stemming from his participation, along with two other accomplices, in the robbery of a number of employees and customers of a pharmacy in Lewisburg. However, Frazier escaped from jail before his scheduled trial and was not apprehended until 2002. In 2003, Frazier was convicted by a Marshall County jury of two counts of malicious shooting, one count of assault with intent to commit voluntary manslaughter, one count of assault with intent to commit first degree murder, one count of aggravated assault, six counts of armed robbery, and two counts of assault with intent to commit robbery. The jury sentenced Frazier to indeterminate sentences for all the convictions except the six armed robberies, for which the jury fixed sentences of life imprisonment. The trial court grouped the thirteen convictions into three categories for purposes of consecutive sentencing, resulting in six concurrent life sentences consecutive to concurrent sentences of eight to twenty years and consecutive to a ten to twenty-five year sentence. This resulted in an effective sentence of life plus eighteen to forty-five years in the Department of Correction. On appeal, Frazier argues: (1) he was sentenced to crimes for which no guilty verdicts were returned by the jury; (2) the evidence is insufficient to support his convictions for assault with intent to commit robbery of Ollie Bagley and assault with intent to commit robbery of Goldie Crabtree; (3) the jury's sentencing verdicts reflect two sentences which were not authorized for the crimes for which he was convicted; (4) his convictions for malicious shooting must be set aside because (a) he was never indicted for these crimes, (b) they are not lesser offenses of any indicted offenses, and (c) his dual convictions for malicious shooting and assault with intent to commit voluntary manslaughter of Judy Watson constitute double jeopardy; and (5) the trial court erred by imposing consecutive sentences.

After review, we find no error with regard to issues (1) and (5). With regard to issue (2), we conclude that the evidence is insufficient to support his two convictions of assault with intent to commit robbery; therefore, the convictions are modified to reflect convictions for aggravated assault, with the respective sentences fixed at not less than two years nor more than ten years. Issue (3) is rendered moot in view of our holding in issue (2). With regard to issue (4), we conclude that double jeopardy principles preclude dual convictions for assault with intent to commit voluntary manslaughter and malicious shooting. Accordingly, we merge the Appellant's conviction for assault

with intent to commit voluntary manslaughter into his conviction for malicious shooting and remand for entry of a single judgment of conviction for malicious shooting.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Modified in Part; and Remanded**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Merrilyn Feirman, Nashville, Tennessee; and Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the Appellant, Willie Joe Frazier.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; W. Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

The evidence at trial established that on October 11, 1980, the Appellant, along with Jerry Fails[1] and Diane Grooms, entered H & S Pharmacy in Lewisburg soon after the store's 8:00 a.m. opening. Fails was armed with a 16-gauge pump shotgun, and the Appellant carried a pistol. The trio herded store clerk Ann Worley, seventeen-year-old employee Richard Tate, pharmacist Sam Shelton, bookkeeper Judy Pigg, and eighty-one-year-old deliveryman Ollie Bagley, along with customers, Jackie Lowe, Dorothy Collins, Goldie Crabtree, Billy Pugh, and Pugh's grandniece at gunpoint to a small office at the back of the store. After escorting the victims to the office, Fails announced that everyone would be shot. Later Fails apparently reconsidered and told the victims that they would be tied up. However, when the assailants ran out of rope, the victims were again informed that they would be shot. Fortunately, additional bindings were found. At trial, Worley, Tate, Pigg, Pugh, and Collins testified that after being ordered to lie on the floor, their jewelry and wallets were taken. The Appellant told Worley that if she didn't take her rings off, he would cut off her fingers. Bagley was kicked to the floor and "stomped" in the head. Lowe testified that no money was taken from her person. When Pugh's eighteen-month-old grandniece began to cry, Fails directed the Appellant to kill the child, but the Appellant refused. While Fails and Grooms were in the pharmacy area of the store stealing narcotics and a bank deposit bag containing money, the Appellant remained in the office with the victims.

---

[1]Co-defendant Fails' surname is spelled "Fells" in the trial transcript; however, other documents in the record reflect a spelling of "Fails." Additionally, this court utilized the spelling "Fails" in a decision involving co-defendant Diane Grooms. *See State v. Grooms*, 653 S.W.2d 271, 273 (Tenn. Crim. App. 1983).

Richard and Judy Watson arrived at H & S Pharmacy while the robbery was still in progress. Mr. Watson left his wife in the car while he went inside the store to purchase a birthday card. As Mr. Watson was reading cards, Fails approached and pointed a gun at him. Fails then ordered Watson to "come here," and, upon compliance, Fails placed the gun barrel next to Watson's left thigh and pulled the trigger. The shotgun injury required amputation of the leg. Grooms told the Appellant and Fails, "[Watson] has a wife or a girlfriend in the car," and one of the men responded, "we have got to get her in here." In the meantime, Mrs. Watson, tired of waiting for her husband, decided to go inside the pharmacy to investigate his delay. As she stepped out of her vehicle, Mrs. Watson saw the Appellant and Grooms carrying a large box from the store. Grooms looked back in the store, smiling and waiving, and said, "see you later." As Mrs. Watson entered the store and walked toward the card section, Fails pointed a shotgun at her and said, "I got your God damn husband, and you are going to be next, you white bitch." After she saw her husband lying in a pool of blood, she was pulled past the office and into the storage area where Fails told her to lie down and then proceeded to shoot her in the right leg. The trio then fled in Grooms' automobile.

Jackie Green, a deputy sheriff with the Marshall County Sheriff's Department, was on routine patrol in a vehicle unequipped with a police radio when he noticed an older model, dark green Buick with Alabama tags speeding down West Commerce. The car eventually pulled over on the shoulder of the road, and Green pulled behind it. Fails, who was in the passenger seat of the car, exited the vehicle and fired two shots at Green, shattering his windshield. Fails then got back in the car, and sped away. Unable to radio for backup, Green stopped at a gas station and called the sheriff's department. Grooms' abandoned vehicle was found several miles away. Soon thereafter, detectives with the Lewisburg Police Department found the Appellant hitchhiking a short distance from the abandoned vehicle. His accomplices were arrested the next day.

While awaiting trial in the spring of 1981, the Appellant escaped from the Marshall County Jail. In September 2002, the Appellant was stopped by a Vancouver, Washington police officer for a cracked windshield. A routine computer check of the Appellant's driver's license ultimately led to his arrest and return to Marshall County, Tennessee. Following a jury trial and jury sentencing, the Appellant was convicted of the following offenses and sentenced as follows:

1. Malicious shooting of Richard Watson - 4 to 10 years
2. Assault with intent to commit voluntary manslaughter of Judy Watson - 2 to 5 years
3. Malicious shooting of Judy Watson - 4 to 10 years
4. Assault with intent to commit first degree murder of Jack Green - 10 to 25 years
5. Aggravated assault of Jackie Lowe - 4 to 10 years
6. Armed robbery of Sam Shelton - life
7. Armed robbery of Billy Pugh - life
8. Armed robbery of Judy Pigg - life
9. Armed robbery of Dorothy Collins - life
10. Armed robbery of Ann Whorley - life
11. Armed robbery of Richard Tate - life
12. Assault with intent to commit robbery of Ollie Bagley - 10 to 42 years
13. Assault with intent to commit robbery of Goldie Crabtree - 10 to 21 years

**Analysis**

## I. Absence of Guilty Verdicts

The Appellant contends that he was sentenced by the jury for crimes for which no verdicts of guilt were returned. Specifically, he asserts that although he was indicted and sentenced for the armed robberies of Ann Whorley and Richard Tate, the jury failed to return verdict forms of guilt for these offenses. The record contains guilty verdict forms for the two respective convictions. Accordingly, this issue is without merit.

## II. Sufficiency of the Evidence

Next, the Appellant argues that the evidence is insufficient to support his separate convictions for assault with the intent to commit robbery of Ollie Bagley and of Goldie Crabtree. The Appellant was indicted for the armed robbery of both Crabtree and Bagley; however, at the close of the proof, the trial court granted a judgment of acquittal on these charges, as no proof was presented that anything was taken from either victim. The trial court, however, charged the jury on the lesser included offense of assault with intent to commit robbery.[2] To convict of this crime, the State was required to prove beyond a reasonable doubt the following essential elements: (1) that the defendant unlawfully assaulted the alleged victim; (2) that the defendant intended to commit the specific offense of robbery; and (3) that the offense of robbery was not consummated. Tenn. Code Ann. § 39-607 (1980) (repealed 1982).

The Appellant argues that the convicting proof is insufficient because no evidence was introduced to establish that either Bagley or Crabtree was the intended victim of a robbery. The record reveals that Bagley was deceased by the time this case came to trial in 2002. Goldie Crabtree was not a witness at trial, and no explanation was provided for this person's absence.

Considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

---

[2]As discussed *infra*, the trial court did not charge the lesser offense of assault with intent to commit robbery by means of a deadly weapon.

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The State argues that the jury could infer from the totality of the evidence that it was the Appellant's intent to rob Bagley and Crabtree following their removal with the others to the office area. We would agree that a conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). However, it is apparent from the record that the robbers' primary purpose for confining the victims in the back office was for the Appellant to maintain control over their person while the two other robbers collected narcotics and cash from the pharmacy. Although the majority of those confined in the office testified that they were robbed at gunpoint, at least one victim testified that the perpetrators at no time attempted to remove valuables from her possession. At trial, three victims briefly testified regarding the Appellant's and Fails' treatment of Bagley and Crabtree while the two were in the office. However, no testimony suggested that either Bagley or Crabtree was ever the intended victim of a robbery. In the absence of any evidence of an intent to rob either Bagley or Crabtree, the Appellant's two convictions for assault with intent to commit robbery must be reversed and vacated.

Notwithstanding a lack of evidence for these crimes, the record does establish, through the testimony of the three witnesses, Sam Shelton, Judy Pigg, and Dorothy Collins, that Bagley was brutally assaulted by Fails. After the eighty-one-year-old Bagley was removed to the office, his hands were tied behind his back, and he was ordered by Fails to "get down on the damn floor." Shelton testified that after Bagley explained he could not get down on the floor, Fails "knocked him down." "When he was lying on the ground (sic), on his stomach, Fails stood above him and stomped his head as hard as he could. It looked like he meant to kill him." Pigg added that Bagley was kicked to the floor, and Collins stated that Bagley had "a gash on his head" and bled "profusely." The proof with regard to both Bagley and Crabtree established that they, along with the other victims, were taken to the office at gunpoint and forced to remain there at gunpoint, while being subjected to threats of death or bodily harm.

On the date of these offenses, our code provided, "Any person indicted for assault with intent to kill or assault with intent to commit any other felony may be found guilty of assault or aggravated assault. . . ." Tenn. Code Ann. § 39-608 (1980) (repealed 1982). The trial court correctly instructed the jury that aggravated assault was a lesser included offense of assault with intent to commit robbery. The court specifically charged the jury with that portion of the aggravated assault statute which provides that before the Appellant could be convicted of aggravated assault, the State was required to prove beyond a reasonable doubt that: (1) the defendant assaulted another, and (2) the

defendant displayed a deadly weapon or the victim knew the defendant had a deadly weapon in his possession. *See* Tenn. Code Ann. § 39-601(3) (1980) (repealed 1982).

After review of the record, we conclude that the evidence supports convictions for the aggravated assaults of Ollie Bagley and Goldie Crabtree. Accordingly, we modify the Appellant's judgments of conviction to reflect convictions of aggravated assault of Ollie Bagley and aggravated assault of Goldie Crabtree. When the proof shows the defendant guilty of a lesser offense from that which he was convicted, which is included in the greater, appellate courts should sustain the conviction of the lesser offense and at the same time fix the minimum penalty under the lesser offense. *Corlew v. State*, 180 S.W.2d 900, 903 (Tenn. 1944); *see also Farris v. State*, 535 S.W.2d 608, 621 (Tenn. 1976). Therefore, we fix the sentence for each of these offenses at the minimum sentence of not less than two years nor more than ten years. *See* Tenn. Code Ann. § 39-601(4).

### III.  Unauthorized Sentences

As previously noted, the Appellant was convicted by the jury of the assault with intent to commit robbery of Goldie Crabtree and of Ollie Bagley. The Appellant contends that the jury improperly sentenced him in both counts for assault with intent to commit armed robbery as opposed to the jury's verdict of assault with intent to commit robbery. The State concedes the error, which resulted from the jury's being provided with incorrect jury sentencing forms that did not correspond to the conviction offenses. This issue, however, is rendered moot in view of our modification of both assault with intent to commit robbery convictions to aggravated assault.

### IV. Unindicted Offenses and Double Jeopardy

The Appellant argues that his conviction for the malicious shooting of Richard Watson cannot stand because he was never indicted for this crime, and malicious shooting is not a lesser offense of the indicted offense of assault with intent to commit murder. It is undisputed that malicious shooting is not a lesser included offense of assault with intent to commit first degree murder. *State v. Max*, 714 S.W.2d 289, 294-95 (Tenn. Crim. App. 1986). The Appellant's argument is ill-founded, however, as the record plainly shows that he was indicted in separate counts for assault with intent to commit first degree murder of Richard Watson and the malicious shooting of Richard Watson.

Similarly, the Appellant argues that his conviction for the malicious shooting of Judy Watson is invalid because he was never indicted for this offense, and malicious shooting is not a lesser offense of the indicted offense of assault with intent to commit first degree murder. Again, this contention is without merit because the Appellant was indicted for both crimes of assault with intent to commit first degree murder and malicious shooting.

Additionally, the Appellant argues that his dual convictions for both the malicious shooting of Judy Watson and the assault with intent to commit voluntary manslaughter of Judy Watson violate constitutional protections against double jeopardy. Initially, we note that the Appellant has failed

to cite any authority in support of this argument as required by Tenn. R. App. P. 27(a)(7) and Tenn. Ct. Crim. App. R. 10(b). Furthermore, the Appellant has not raised the issue prior to this appeal. Typically under these circumstances, our analysis of an issue is waived. *See* Tenn. R. App. P. 13(b). Nevertheless, review of this issue is permitted if plain error exists. Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Because a fundamental constitutional right of the Appellant is affected, we elect plain error review. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).

To resolve a double jeopardy punishment issue, we must: (1) conduct an analysis of the offenses pursuant to *Blockburger v. United States*, 284 U.S. 299 (1932); (2) analyze the evidence used to prove the offenses according to *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); (3) consider whether there were multiple victims or discrete acts; and (4) compare the purposes of the respective statutes. *State v. Denton*, 938 S.W.2d 373, 381 (Tenn. 1996).

Tennessee Code Annotated section 39-610 (1975) (repealed 1982) provided that malicious shooting occurs when one person "unlawfully or maliciously shoots or stabs another." On the date these crimes were committed, there was no codified crime of assault with intent to commit voluntary manslaughter. Nonetheless, the provisions of Tennessee Code Annotated section 39-603 (1975) (repealed 1982) provided:

> If any person assault another, with intent to commit, or otherwise attempt to commit, any felony or crime punishable by imprisonment in the penitentiary, where the punishment is not otherwise prescribed, he shall, on conviction, be punished by imprisonment in the penitentiary not exceeding five (5) years, or, in the discretion of the jury, by imprisonment in the county workhouse or jail not more than one (1) year, and by fine not exceeding five hundred dollars ($500).

Thus, any person who assaulted another with intent to commit voluntary manslaughter was guilty of an attempt to commit a felony as provided by Tennessee Code Annotated section 39-603. Assault with intent to commit voluntary manslaughter occurred (1) when an individual feloniously and willfully assaulted any person, (2) with intent to commit voluntary manslaughter, and (3) the specific felony of voluntary manslaughter was not consummated. Malicious shooting, by definition, required a "shooting" whereas assault with intent to commit voluntary manslaughter did not. Moreover, assault with intent to commit voluntary manslaughter required proof of an intent to kill and malicious shooting did not. Thus, there is not an identity of elements. *See Max*, 714 S.W.2d at 294-95.

Next, we consider the evidence utilized to prove the offenses under *Duchac*. The evidence relied upon by the State to establish both crimes was the same, *i.e.*, a single gunshot to the victim's leg. Thus, there was one discrete act and one victim. Finally, the malicious shooting and assault with intent to commit first degree murder statutes have the same purpose. Their common purpose

is to deter assaultive conduct. Accordingly, we conclude that double jeopardy bars convictions for both assault with intent to commit voluntary manslaughter and malicious shooting. We modify the judgments of conviction to reflect merger of the assault with intent to commit voluntary manslaughter into the conviction for malicious shooting. *See State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993) (under the merger concept, the lesser conviction merges with the greater offense resulting in one judgment of conviction).[3]

## V. Consecutive Sentencing

Next, the Appellant challenges the trial court's imposition of consecutive sentences. In ordering partial consecutive sentences, the trial court followed the dictates of *State v. Gray*, 538 S.W.2d 391 (Tenn. 1976), finding the Appellant both a dangerous offender and a multiple offender. At sentencing, the trial court grouped the Appellant's convictions of unlawful acts into three groups: (1) robbery of the victims and assaults during perpetration of the robberies; (2) the assault of the Watsons, which occurred after the robberies were complete; and (3) the assault of Deputy Green during flight. The Appellant argues that during his twenty-two years of freedom, he committed no crimes, which demonstrates "absolute knowledge that the public [was] not at risk." This argument is misplaced. While the Appellant's relative crime-free existence in society is relevant, it is not dispositive.[4]

In *Gray*, the supreme court held, "[a] defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." 538 S.W.2d at 393 (emphasis added). The central purpose of consecutive sentencing of dangerous offenders is to protect society against those offenders who commit aggravated crimes which pose a high risk to human life. It is clear from the holding of *Gray* that a finding that the defendant is a dangerous offender may be, and often will be, determined solely from the circumstances surrounding the crimes for which the defendant is being sentenced.[5] "The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating factors . . . ." *Id.*

The presence of aggravating factors in this case is overwhelming. The Appellant stands convicted of twelve crimes of violence. His conduct and that of his accomplices directly impacted the lives of twelve innocent victims. The proof established that the victims of the robberies

---

[3]The minimum punishment for assault with intent to commit the felony of voluntary manslaughter was not less then one year nor more than five years; whereas, the minimum punishment for malicious shooting was not less than two years nor more than ten years. Tenn. Code Ann. §§ 39-603, -612.

[4]The State disputes the allegation that the Appellant led a crime-free existence, focusing upon the Appellant's fraudulent use of identification sources, including the use of his minor son's Social Security number.

[5]On the date the offenses were committed, consecutive sentencing was governed solely by the guidelines established in *Gray*.

reasonably believed they were going to die. A deputy sheriff was fired upon during the escape with the shotgun blast striking the deputy's patrol car. Ollie Bagley was never functional after his brutal beating. The Watsons were the victims of a senseless assault. Richard Watson's leg required amputation. The facts of this case demonstrate a disregard for human life and a willingness to commit crimes in which the risk to human life is high. The trial court's sentencing decision is firmly supported by the law and merciful under the facts.

The Appellant also argues that this state's procedure for the imposition of consecutive sentences violates *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). He asserts that the trial court effectively increased the total length of his sentence beyond the statutory minimum by imposing consecutive sentences without a jury determination. Our supreme court has held that the Tennessee Sentencing Act does not violate the Sixth Amendment. *State v. Gomez and Londono*, No. M2002-01209-SC-R11-CD (Tenn. April 15, 2005). Moreover, our high court has specifically noted that *Blakely* does not impact this state's consecutive sentencing scheme. *State v. Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004).

### CONCLUSION

Based upon the foregoing, we merge the Appellant's conviction for assault with the intent to commit voluntary manslaughter of Judy Watson into his conviction for malicious shooting and direct entry of a single judgment of conviction for malicious shooting. We reverse the Appellant's convictions for assault with the intent to commit robbery of Ollie Bagley and Goldie Crabtree and remand for entry of judgments of conviction for the lesser included crime of aggravated assault of Ollie Bagley and Goldie Crabtree. The minimum sentence of not less than two nor more than ten years imprisonment is imposed for each conviction, provided the State indicates its consent. In the event the State does not consent, the case will be remanded for a new trial upon the two charges of aggravated assault and any applicable lessers. Imposition of consecutive sentencing is affirmed with the grouping of all convictions to remain as originally determined by the trial court, which, in effect, will result in no change in the Appellant's initially imposed aggregate sentence.

_____
DAVID G. HAYES, JUDGE